STANDARD COFFEE COMPANY *v.* WATSON.

4-5562                                    129 S. W. 2d 948

Opinion delivered June 19, 1939.

*Huie & Huie,* for appellant.

*G. W. Lookadoo* and *J. H. Lookadoo,* for appellee.

SMITH, J. Appellee, a resident of Pulaski county, recovered judgment for $12,500, in the Clark circuit court, to compensate an injury sustained in Grant county. At the time of his injury, appellee's employment was in the nature of an apprenticeship, learning the business of selling and delivering coffee to the customers of the appellant coffee company. His wages, while so employed, were $9 per week. He was under the supervision of David Ray, an experienced salesman. It was necessary for a new man to travel for about three weeks with a regular route salesman to learn the customers and the method of selling coffee, so that he could take a route of his own. Ordinarily, orders were taken for delivery two weeks later. Ray was provided with a truck in which he carried the coffee previously ordered.

Sheridan, Arkansas, was in Ray's territory, and he and appellee had been engaged, on the day of March 9,

1937, in taking orders and in making deliveries. They ate supper at a hotel in Sheridan, and about 7:30 p. m. drove away in the truck. Their purpose in doing so is one of the sharply controverted questions of fact. Appellee testified that it was their purpose to call on certain customers whom they had failed to see during the day, and that, while doing so, through Ray's negligence, they had a collision with another car, which was badly damaged, and appellee was hurt. Ray reported the collision to the company's manager at Little Rock, who came to the scene of the collision, and, being advised by Ray that the collision occurred while he was pursuing his employment, the manager paid the owner of the car with which the truck had collided for damages sustained to the car. Ray admitted making this statement to the company's manager, and admitted making the same statement to appellee's attorney before the suit was brought. He testified that statement was untrue, and had been made to save his job, as he knew he would be fired, if it were known that he had violated his instructions about using the truck for personal purposes. Ray, who was not employed by the appellant company at the time of the trial, testified that he and appellee had finished their day's work on March 9th, and had arranged for the next day's work, after which they left to visit a night club near Sheridan, and that they had no customers on the road out of Sheridan over which they drove to the night club. A lady employed at the club testified that Ray and appellee stopped at the club between 2 and 2:30 on the afternoon of the day of the collision, and that Ray said, in appellee's presence, that they would return that night to ''dance a couple of numbers.'' Bates, the operator of the club, stated that he saw Ray and appellee after the collision, and again the next morning, and that he asked Ray, in appellee's presence, ''Where in the world were you boys going in such a hurry?'' and Ray answered, ''Well, we were going out to your place.'' However, appellee testified that they were pursuing their employment, when the collision occurred, and that they had called on two customers, whose names he did not know. This conflict in the testimony made the question one for the jury, whether appellee and

Ray were pursuing their employment when the collision occurred.

It is insisted that the damages awarded were grossly excessive; and we think they were. It is true appellee testified that he suffered much pain the night he was injured, and was required to take four aspirin tablets to sleep, and his uncle, who slept in the room with him that night, testified that he had heard appellee groaning during the night. Appellee completed his apprenticeship and acquired a route of his own, but he suffered some pain every day when he drove his car, and on some days he would take an entire box of aspirin to obtain relief. He was finally compelled to quit work and rest up, and had sustained a loss in weight, and had become nervous and easily excited, and his general physical condition was not good.

Dr. R. L. Bryant testified that he took an X-ray picture of appellee, and had otherwise examined him. He found appellee to have "considerable tenderness and rigidity of the muscles, neck, back, and hips, and there was a visible curvature of the upper thoracic or chest portion of the spinal column to the left side. The curvature of the back is a very pronounced definite condition, and shows up in the X-ray, and there is an injury to a joint between the back and pelvis on the right side, or the right sacroiliac joint, with some separation at this joint, a space." And this witness attributed the curvature of the spine to an injury, although he admitted that he found no fracture or other evidence of an injury which could have caused the curvature of the spine. A hypothetical question was propounded to this witness, which contained a recital of the manner in which appellee stated he had been injured, this being that, as the truck collided with the car, cartons of coffee in the rear of the truck, weighing 60 pounds, were thrown upon him. The doctor said that such a condition as he found could have been caused by an injury of that kind.

This doctor admitted that he had never seen appellee until September 20, 1938, which was more than a year and a half after the collision occurred, and that the only evi-

dence of an injury which he found was a curvature of the spine. He admitted that appellee may have been born with this curvature, as many people were, and he also stated that, if one received an injury sufficient to cause the curvature, he would be put to bed immediately, and that he "did not believe that any one having that serious type of injury could go ahead at his work, stooping and lifting and physical exertion." He also admitted that such pains in the back as those of which appellee complained could be, and frequently were, caused by an enlarged and tender prostate.

Opposed to this testimony was that of a number of doctors, whose qualifications were admitted, who testified that they had made and had examined X-ray pictures of appellee, and that they found no evidence of any curvature of the spine or of any injury of any kind. There was one fact, however, upon which all the doctors were agreed, and that was that an injury sufficiently severe to cause curvature of the spine would, for some time at least, render incapable the injured party from doing any kind of active work.

Ray testified that none of the packages were thrown over the seat, and persons who assembled after the collision testified that they saw none which had been, although there was testimony that "the impact was strong enough that it knocked the wheels down on the car."

In view of the jury's verdict, we must assume that appellee was injured in the manner stated by him. However, there are certain facts relating to the extent of his injury which are undisputed, even by appellee.

After the collision appellee got out of the truck, and went to look at the road, and stood around the place of the collision for an hour or more, waiting for another party. The witnesses who saw him testified that he walked and acted naturally, and showed no evidence of an injury, and did not state that he had been hurt. Appellee reported for work the next morning and discharged his usual duties, which required him to get in and out of the car from forty to fifty times a day. The truck had been disabled and another car supplied. Appellee's employ-

ment required him to handle the heavy cartons of coffee. He continued in that employment for several months after his injury, and had acquired a route of his own, although he testified that he was assisted in loading the cartons of coffee into his truck. The testimony shows that appellee lost considerable weight, but it is undisputed that his tonsils were infected, and that he had an enlarged and tender prostate, and that he suffered from colitis. He had a chronic infection of his leg, for which he was twice operated upon, the last time in 1935, and he had a discharge from his penis in the fall of 1937 and the spring of 1938. While appellee consulted doctors for other purposes, he did not receive any treatment for the injury sustained in the collision. He was provided with and put in charge of a route of his own about the last of March, 1937, and his reports to appellant company continuing to the last of October, show that he was regularly employed each week during that time, with an increase of earnings. On May 7, 1938, he made application to another company for employment as a solicitor, in which he stated that he had no physical defects, and on the 18th of that month he wrote a letter to appellant's superintendent, in which he stated: "I take this opportunity of thanking you and Standard Coffee Company for all that you have did for me." The letter contained no intimation that he had received an injury while employed by appellant.

We must assume, however, in view of the verdict of the jury, that appellee did sustain an injury; but it appears to us that it would be an abdication of our function, to review trials in the court below, which come on appeal to this court, to affirm the judgment for the amount for which it was rendered. The undisputed testimony, including that of the expert physician who testified in appellee's behalf, is to the effect that, had he sustained an injury of sufficient severity to curve his spine, he would immediately have been confined to his bed. He was not confined, and consulted no doctor until he brought this suit, and he continued his employment without any loss of time on account of his injury.

It appears to us, therefore, that any recovery in excess of a thousand dollars would be excessive, and the judgment will, therefore, be reduced to that amount, and, as thus modified, is affirmed. *M. P. Rd. Co.* v. *Remel,* 185 Ark. 598, 47 S. W. 2d 548; *Coca Cola Bottling Co.* v. *Eudy,* 193 Ark. 436, 100 S. W. 2d 683.

HUMPHREYS, MEHAFFY and BAKER, JJ., dissent.

MEHAFFY, J., (dissenting). I cannot agree with the majority in holding, in effect, that this court has the right to sit as a jury and determine the amount of damages that an injured person is entitled to recover.

It is true that this court has several times decided that verdicts were excessive and reduced the judgment to the amount that this court believes is not excessive, and affirmed the judgment for such amount. I think when it does this, when it constitutes itself a jury to determine the extent of the injury and the amount the injured person is entitled to recover, it violates the Constitution.

Section 7 of art. 2 of the Constitution reads as follows: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law."

"What does the Constitution mean when it says "trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy"? Does that mean that when the jury decides a question of fact, decides the amount that an injured person is entitled to recover, this court, if it happens to disagree with the jury, can pass on the facts and fix the amount and compel the appellee to accept the amount so fixed? I do not think so. I think it means that the finding of facts by a jury, if there is any substantial evidence to sustain the finding, is conclusive; and this court cannot set aside the verdict if supported by substantial evidence. If this court could fix the amount it would be doing exactly what the Constitution says the jury shall do. This court has no more right to substitute its judgment for the judgment of the jury, than the jury

has to substitute its judgment for the court's on a question of law. In other words, questions of law are to be decided by the court, and questions of fact are to be decided by the jury.

Section 1538 of Pope's Dig. provides, among other things, that the verdict shall not be held excessive or be set aside as excessive, except for some erroneous instruction or upon evidence, aside from the amount of damages assessed, that it was rendered under the influence of passion and prejudice. Of course the legislature did not intend to say, and did not mean, that a verdict not supported by substantial evidence cannot be set aside; it has always been the rule, before and since the passage of the law referred to, that the verdict of the jury must be sustained by substantial evidence or it would be set aside; but where the verdict is sustained by substantial evidence, no court has any right to set it aside. To do so would invade the province of the jury and would be substituting the judgment of the court as to the facts for the judgment of the jury. If we can do this, there is no reason for having a jury.

It is true that this court, in the case of *St. Louis & N. Ark. Rd. Co.* v. *Mathis,* 76 Ark. 184, 91 S. W. 763, 113 Am. St. Rep. 85, construed the above mentioned statute to mean "a limit on the jurisdiction conferred on the Supreme Court by the Constitution." That case, however, was first affirmed by this court, and then on rehearing was reversed, the court holding that the amount allowed by the jury was excessive, but it did not reduce it, as was done in this case. The court there held that if the appellee would remit a portion of the judgment, it would be affirmed; otherwise, reversed and the cause remanded for a new trial. That decision means, and can only mean, that the court did not think there was substantial evidence to sustain the full amount, but it did not then undertake to reduce and modify it. To do this is to pass on the facts, and that is the province of the jury and not the court. It is true we have modified and affirmed judgments; have reduced amounts found by the jury; but under the Constitution and laws we have no right to do that. If we do that, we are passing on the

facts and substituting our judgment for the judgment of the jury, which we have no right to do.

In the case of *M. P. Rd. Co.* v. *Remel*, 185 Ark. 598, 48 S. W. 2d 548, we said: "The amount of recovery in a case of this sort should be such, as nearly as can be, to compensate the injured party for his injury. The suit is for compensation, and compensation means that which constitutes or is regarded as an equivalent or recompense; that which compensates for the loss or privation, remuneration."

The same declaration of law was made in *Coca-Cola Bottling Co. of Arkansas* v. *Cordell*, 189 Ark. 1132, 76 S. W. 2d 307. In that case we also said: "While the discretion of the jury is very wide, it is not an arbitrary or unlimited discretion, but it must be exercised reasonably, intelligently, and in harmony with the testimony before them. The amount of damages to be awarded for breach of contract, or in actions for tort, is ordinarily a question for the jury; and this is particularly true in actions for personal injuries and other personal torts, especially where a recovery is sought for mental suffering."

This court, in the case of *Manhattan Const. Co.* v. *Atkisson*, 191 Ark. 920, 88 S. W. 2d 819, said: "Under our system of jurisprudence, it is the province of the jury to pass upon the facts. It is not only their privilege, but their right, to judge of the sufficiency of the evidence introduced, to establish any one or more facts in the case on trial. The credibility of the witnesses, the strength of their testimony, its tendency, and the proper weight to be given it, are matters peculiarly within their province. The law has constituted them the proper tribunal for the determination of such questions. To take from them this right is but usurping a power not given." *Cunningham* v. *Union Pac. Ry. Co.*, 4 Utah 206, 7 Pac. 795; *Equitable Life Assurance Society* v. *Felton*, 189 Ark. 318, 71 S. W. 2d 1049; *Healy & Roth* v. *Balmat*, 189 Ark. 442, 74 S. W. 2d 242; *Browne* v. *Dugan*, 189 Ark. 551, 74 S. W. 2d 640; *C. R. I. & P. Ry. Co.* v. *Britt*, 189 Ark. 571, 74 S. W. 2d 398.

Not only is this right to pass on the facts a constitutional right, and by the Constitution the jury is made the judge of the facts, but if there were no provision in the Constitution prohibiting us from passing on the facts, I am persuaded that there are but few men of such transcendent ability that they can take a printed record, read it in the office, and know more about whether an injured person has suffered pain and anguish, and the extent of such suffering, than twelve disinterested citizens who, under the law, must be of good character, of approved integrity, sound judgment, and reasonable information  These twelve citizens see the witnesses and hear them testify, and frequently may be able to tell something about the pain and suffering by the appearance of the injured party, his expressions and his manner, and they can tell also whether the witnesses are telling the truth; that is, they are in much better position to judge of that than we are.  Even if all witnesses told the truth, we would still lack the opportunity that the jury has of seeing the injured party himself.  But we have good authority for the fact that all witnesses do not tell the truth.

"A faithful witness will not lie; but a false witness will utter lies."  Proverbs 14:5.

How anyone can imagine that he can, from reading the printed record, arrive at a just conclusion or be better able to determine than the jury the extent of one's injury and the amount necessary to compensate him for such injury, I cannot conceive.

I think that if we reach the conclusion that there is not substantial evidence to support the amount of the verdict, the only thing we can rightfully do is to fix an amount which we think is not excessive and give the appellee an opportunity to enter a remittitur, or reverse the judgment and remand the case for a new trial.

I, therefore, respectfully dissent from the holding of the court in reducing the damages and also in holding that we have a right to assess the damages ourselves.

I am authorized to state that Mr. Justice HUMPHREYS and Mr. Justice BAKER agree with me in the conclusions herein stated.