4-8062                                    199 S. W. 2d 602

Opinion delivered February 10, 1947.

*Ernest Briner* and *Donham, Fulk & Mehaffy,* for appellant.

*Kenneth C. Coffelt* and *Wm. J. Kirby,* for appellee.

SMITH, J.   Appellee recovered a judgment for $5,000 to compensate a personal injury which she sustained as the result of a collision between an automobile in which she was riding, driven by her husband, and an automobile driven by appellant.

For the reversal of this judgment it is insisted, first, that a verdict should have been directed in appellant's favor for the reasons, (a) that the undisputed testimony shows that the sole proximate cause of the collision and consequent injury was the negligence of appellee's husband and, (b) that appellee was guilty of contributory

negligence; second, that certain incompetent testimony was admitted and, third, that the verdict is excessive.

The collision occurred in the afternoon of December 8, 1945, at the intersection of Roosevelt Road and State Street, in the city of Little Rock. The cars involved were a Ford and a Buick. The Ford was owned and being driven by Bryant Laster, the husband of appellee, who was riding on the front seat with him. Burke Williams, an invited guest, was riding on the rear seat. The Buick was owned and being driven by appellant, who had no passenger.

State Street runs north and south, and Roosevelt Road runs east and west, and these streets cross at a right angle. The Buick car was proceeding west on Roosevelt Road, while the Ford was traveling south on State Street.

Under an ordinance of the city of Little Rock, Roosevelt Road is designated a boulevard, or through street, from a point east of the place of the collision to another point west thereof. The ordinance requires all traffic entering Roosevelt Road to stop before driving into that road and to ". . . proceed cautiously yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, and may then proceed." Pursuant to this ordinance a stop sign was maintained on State Street, at its entrance to Roosevelt Road. Appellee's husband resided at Bauxite, Arkansas, and testified that he was not familiar with the streets of Little Rock, and that he did not notice the stop sign as he drove into Roosevelt Road, without stopping, but the testimony shows that he had reduced his speed as he entered Roosevelt Road to six or eight miles per hour, although other testimony placed his speed higher. The testimony is conflicting as to the speed at which appellant was traveling, some of which placed the speed of that car as high as sixty miles per hour.

Traffic policemen were called to the scene after the collision by a witness who saw it, and Mr. Laster, appel-

lee's husband, was arrested and carried to the police station where he plead guilty to a violation of the stop ordinance, and paid a fine of $15 which was imposed.

It is urged that this negligence of Mr. Laster was the sole proximate cause of the collision, and that for this reason a verdict should have been directed in appellant's favor. Laster testified that he saw appellant's car three-fourths of a block up the street, and that he thought. he could enter the road and right his car before the Buick overtook him, but that he misjudged the speed at which the Buick was approaching.

Appellant testified that he saw the Ford car, and it looked like it was not going to stop, although he assumed it would do so, as "lots of people run up to corners at forty miles an hour and stop," and that when he realized that the Ford car was not going to stop, it was then too late to avoid a collision, as he was then in the intersection of the streets.

This question of fact was submitted to the jury under instructions of which no complaint is made, and under the testimony recited the jury might have found, and evidently did find, that although Laster was negligent, this negligence was not the sole proximate cause of the collision; in other words, that the collision was the result of the concurring negligence of the drivers of the two cars. The recent case of *Oviatt* v. *Garratson,* 205 Ark. 792, 171 S. W. 2d 287, cites a number of other cases which state the law to be that where two or more persons were negligent and their negligence concurred to injure a third person, both parties are liable.

The defense of contributory negligence is based first upon the admission of appellee that she was not keeping a lookout, and did not warn her husband that he was ignoring the stop sign. While both the driver of a car and his guest are alike under the duty of exercising ordinary care, the conduct required to comply with that duty is ordinarily different because of the difference in the circumstances. The subject is extensively annotated in the case of *Leclair* v. *Boudreau,* 101 Vt. 270, 143 Atl. 401,

63 A. L. R. 1427. In the case of *Ark. Valley Coop. Rural Elec. Co.* v. *Elkins,* 200 Ark. 883, 141 S. W. 2d 538, we quoted with approval the following statement from 5 Am. Jur., § 475, p. 769: "A person riding in an automobile driven by another, even though generally not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising reasonable care to avoid injury. The care exacted is that which an ordinarily prudent person would exercise under like circumstances. The law fixes no different standard of duty for a passenger in an automobile than for the driver. Each is bound to use reasonable care. What conduct on the passenger's part is necessary to comply with this duty must depend upon all the circumstances, one of which—and unquestionably an important one—is that he is merely a passenger having no control over the management of the vehicle in which he is riding."

We cannot say, as a matter of law, that appellee was under the duty of keeping the lookout, and this question of fact was submitted to and is concluded by the verdict of the jury.

Contributory negligence is also predicated upon the proposition that appellee voluntarily rode with her husband, knowing that he was in an intoxicated condition. The officers who investigated the collision and arrested Laster for not observing the stop sign, testified that Laster was drinking, and that they could detect the odor of liquor, but one of the officers said that Laster was not "driving drunk," and Laster was not arrested on that account. Laster denied being drunk and appellee corroborated that statement.

Upon this issue the court gave an instruction as favorable as appellant could ask, reading as follows:

"If you find from the evidence in this case that at the time of the collision complained of, the plaintiff's husband was under the influence of intoxicating liquor to an extent which appreciably affected his ability to operate the vehicle in the exercise of ordinary care; and

if you further find that such condition on his part caused or contributed to cause the collision and the plaintiff was herself aware, prior to the collision, of such condition on the part of her husband, but nevertheless continued voluntarily to ride in the said vehicle, then you are instructed that the plaintiff is not entitled to recover anything in this action, and your verdict will be for the defendant Willbanks.''

Error is assigned in permitting appellee's family physician to testify as to a protraction of her menstrual period, the objection being that the complaint contained no such allegation. The complaint did allege, however, that appellee sustained a great nervous shock, and her doctor testified that the premature and continued bleeding of which appellee complained might have been caused by the collision, and we think the testimony was properly admitted. Nevertheless, we think the verdict in the case is grossly excessive, and cannot be sustained under the undisputed testimony.

The doctor testified that in his examination and treatment of appellee he had not thought of connecting the collision with appellee's condition referred to, although the doctor stated it might and could have caused that condition, but he did not testify that it had done so. He testified that appellee was highly nervous and had a case history of irregular bleeding, but he did not recall that appellee mentioned the collision in giving her case history, and that as her nervous condition improved her bleeding decreased. He testified that appellee was approaching her menopause, and that this bleeding was not uncommon during that period. He further testified that he did not find anything to indicate that appellee had sustained a permanent injury, and that the condition referred to would all eventually clear up as she goes through the complete menopause, and that the last showing of menstrual bleeding was two weeks prior to the trial. The doctor also testified that he found a wound on appellee's leg which had left a scar approximately one and one-half inches in length, and that her knee had been lacerated and bruised to some extent, and a slight

scar remained, and that one ankle was sprained or swollen. These appear to have been the matters for which the doctor treated appellee, although he stated that "her biggest difficulty" seemed to be her irregular bleeding. She did not require and did not receive hospitalization.

We think this testimony not sufficient to support a larger recovery than $1,500, and the judgment will be reduced to and affirmed for that amount.

McFADDIN, J., dissents from so much of the opinion as affirmed the judgment.

ED. F. McFADDIN, Justice, dissenting. I agree with all of the opinion of the majority in this case, except the last 12 words thereof, which read:

". . . and the judgment will be reduced to and affirmed for that amount."

I think the better order would have been to reverse and remand the case for a new trial, unless a remittitur be entered. This may seem to be quibbling, but I regard it as vital to the sanctity of our jury system.

This present case is the first instance in which this court has *affirmed a reduced judgment* in a personal injury case since I became a member of the court on January 1, 1943. In all other cases the court has allowed the plaintiff the alternative of (1) entering a remittitur and accepting affirmance, or (2) having a reversal and new trial. But in the present case the majority is reducing the verdict and then affirming it as reduced. As I see it, the majority is thus (1) establishing itself as the jury and rendering a verdict; and (2) sitting as an appellate tribunal and affirming the judgment that it has rendered.

I am aware that there are cases in which this court has followed the same procedure as is followed here. One such case is *Standard Coffee Co.* v. *Watson*, 198 Ark. 592, 129 S. W. 2d 948. In that case there was a dissenting opinion by Mr. Justice MEHAFFY; and the following paragraph, copied from the dissenting opinion, expresses my views in the present case:

"I think that if we reach the conclusion that there is not substantial evidence to support the amount of the verdict, the only thing we can rightfully do is to fix an amount which we think is not excessive and give the appellee an opportunity to enter a remittitur, or reverse the judgment and remand the case for a new trial."

*Mo. Pac. R.* v. *Newton,* 205 Ark. 353, 168 S. W. 2d 812 was the unanimous opinion of this court; and therein are listed some of the earlier cases on reduction of excessive verdicts. The opinion contains this language:

"Yet, appellate judges have a sworn duty to perform; and when, after reviewing all of the evidence in a case, the appellate court reaches the conclusion that the verdict is grossly excessive, then it is the sworn duty of the appellate court to indicate the correct amount of the verdict. Just as we would reverse a case because of errors in instructions, so, the case should be reversed if the verdict is grossly excessive. That is the recognized practice."

There are listed cases beginning with *Dodds* v. *Roane,* 36 Ark. 511 (written by Chief Justice ENGLISH), and other cases on down to *S. L. I. M. & S. Ry. Co.* v. *Brabbzson,* 87 Ark. 109, 112 S. W. 222 (written by Mr. Justice McCULLOCH). In all of these cases the order was that, if the remittitur be entered, the judgment would be affirmed, otherwise, the judgment would be reversed and the cause remanded for a new trial. *Mo. Pac.* v. *Newton, supra,* was a unanimous opinion; so the majority there approved the wording of the last paragraph of that opinion, as follows:·

"The plaintiff recovered a verdict for $2,000. Under· the record in this case, any verdict in excess of $1,000 would be grossly excessive; and, if, within fifteen juridical days, a remittitur of $1,000 is entered by the appellee, then the case will be affirmed; otherwise, the cause is reversed and remanded for a new trial because of the excessive verdict."

It was my thought that the language last quoted settled the procedure that this court would follow on this

question. Now, the majority is departing from that procedure, and reverting to the procedure pursued by the majority in *Standard Coffee Co.* v. *Watson, supra*; and—as I see it—denying to the appellee her right to a new trial where she might show substantially stronger facts to support a larger verdict.

I therefore dissent, since I consider such denial of a new trial to the appellee to be an invasion of the sanctity of our jury system.