Sally A. GISRIEL, Administratrix of the Estate of Thomas Jerome Gisriel, Appellee,

Quinn-Moore Oil Corporation, Appellee,

v.

UNIROYAL, INC., Appellant.

No. 74–1364.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1974.

Decided June 6, 1975.

Phillip Carroll, Little Rock, Ark., for appellant.

David M. Powell, Little Rock, Ark., for appellee, Quinn-Moore Oil Corp.

O. Wendell Hall, Jr., Benton, Ark., for appellee, Sally A. Gisriel.

Before GIBSON, Chief Judge, CLARK, Associate Justice, Retired,[*] and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

Thomas Jerome Gisriel was killed on an interstate highway near Benton, Arkansas, following a collision between the truck he was driving and the banisters of a highway bridge.[1] Earlier, Gisriel and the lead driver of the truck, Ray J. Smith, both employees of McMahan of California, had stopped at a filling station and truck center operated by Quinn-Moore Oil Corp., approximately 18 miles from the site of the crash, where they had purchased, and two Quinn-Moore service attendants had installed on their truck, a new tire and flap, both manufactured by Uniroyal, Inc., and a new tube manufactured by the Cooper Tire & Rubber Co.

Sally A. Gisriel, as the administratrix of Gisriel's estate, filed suit in the United States District Court for the Eastern District of Arkansas[2] against Quinn-Moore and Uniroyal.[3] She alleged that the accident had been caused by a blowout of the newly installed tire and tube and sought to recover for the wrongful death of her husband on theories of negligence, breach of warranty and strict liability. Evidence was adduced at trial showing that the newly purchased flap was structurally defective and that Uniroyal had failed to accompany its product with instructions for proper mounting. Additional evidence indicated that the Quinn-Moore service attendants had committed several errors while mounting the tire assembly.[4] The case was sub-

---

[*] Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

[1] Gisriel was alive and appeared to be unhurt immediately after the accident, but when the State Troopers arrived, they found him on the ground, 26 feet beneath the bridge, with glazed eyes and faint pulse.

[2] The Honorable G. Thomas Eisele presiding. Jurisdiction was based on diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332.

[3] In pretrial proceedings, Judge Eisele granted summary judgment to another defendant, Cooper Tire & Rubber Co.

[4] The record contains evidence that, during the mounting of the tire assembly, the Quinn-Moore service attendants (1) neglected to remove the rust from the ring, (2) over-inflated the tire when it was only partially seated, (3) failed to deflate and re-inflate the tire after the beads of the tire had seated at the outer edge of the rim, and (4) poured a pint of diesel fuel between the tire and the wheel in an attempt

mitted to the jury on special interrogatories. The jury returned a verdict of $45,500 in plaintiff's favor, apportioning the liability 10% against Quinn-Moore and 90% against Uniroyal. When Uniroyal's motion for a judgment notwithstanding the verdict was overruled, it filed this appeal. Quinn-Moore, apparently satisfied with the judgment below, has filed a brief and has appeared at oral argument as appellee; plaintiff Gisriel, also denominated an appellee, has elected to rely on Quinn-Moore's brief and oral argument.

Appellant has presented two issues for our review: (1) whether there was sufficient evidence to support the jury's finding that the flap was defective and (2) whether the jury was correctly instructed on Uniroyal's duty to warn of the proper mounting procedure. After due consideration of the record and the arguments advanced by the parties, we affirm.

## I. SUFFICIENCY OF THE EVIDENCE

Uniroyal first contends that there is insufficient evidence in the record to support the jury's verdict, primarily attacking the testimony of plaintiff's expert, Dr. Oscar Kurt, a scientific consultant specializing in physics and chemistry, who attributed the occurrence of the accident to a defect in the composition of the Uniroyal tire flap purchased immediately before the accident. At trial, Dr. Kurt opined that the flap was made of rubber of abnormally grainy and porous composition which had lowered its resistance and caused it to crack. Since the crack in the flap could be aligned precisely with pinch marks and tears in the tube, he theorized that the failure of the tube had been caused by its being pinched by the crack in the flap. All of the other witnesses agreed that the tube failure had resulted from the pinching action of the cracked flap, but Dr. Kurt alone attributed the crack to the quality of the rubber itself.

Uniroyal argues that Dr. Kurt was not properly qualified to testify as an expert, that the test on which he based his opinion was meaningless and that, contrary to Dr. Kurt's theory that the flap was defective, witnesses deposed prior to trial had concluded that the accident had been caused by the improper mounting of the tire and the improper installation of the flap.

Under Arkansas law, which governs the substantive aspects of this litigation,[5] an appellate court may "not overturn a finding of fact by a jury * * * unless there is no reasonable probability that the facts could be as related by a witness upon whose testimony the finding was based." Independent Stave Co. v. Fulton, 251 Ark. 1086, 1088, 476 S.W.2d 792, 793 (1972).[6]

Our review of the record convinces us that we should not set aside the jury's verdict. Dr. Kurt's lengthy testimony provides ample factual support for the jury's conclusion that Uniroyal was, at least in part, responsible for the accident. Without citing all of Dr. Kurt's qualifications as an expert, we note that he holds the degree of Doctor of Philosophy from the University of Illinois, where he pursued a major in physical chemistry and a minor in organic chemistry. In addition, he has studied rubber technology at the University of Akron

---

to lubricate the metal parts. While lubrication of the components is proper, petroleum apparently tends to dissolve rubber products, causing immediate surface weakening and ultimate structural weakening.

5. The flap was installed in Arkansas and the collision occurred in that state. None of the parties have asked us to apply the law of any other jurisdiction.

6. The federal test is not significantly different; it provides that a jury verdict will be sustained so long as there is "substantial evidence" or a "reasonable basis in fact" for the jury's conclusion. Hanson v. Ford Motor Co., 278 F.2d 586, 590 (8th Cir. 1960); see Terminal R. R. Ass'n v. Fitzjohn, 165 F.2d 473, 478 (8th Cir. 1948); Terminal R. R. Ass'n v. Howell, 165 F.2d 135, 138 (8th Cir. 1948). We have held in prior diversity cases that where state and federal tests for sufficiency of the evidence are similar and neither party has raised the issue, we would look to state law as controlling. Hanson v. Ford Motor Co., supra.

and has had extensive professional experience in the laboratories of the United States Rubber Company. "It is well settled \* \* \* in this circuit that the trial judge is given broad discretion in determining the qualifications of proposed expert witnesses, and that these rulings are to be overturned only if there is an abuse of discretion or clear error of law." Havenfield Corp. v. H & R Block, Inc., 509 F.2d 1263, 1272 (8th Cir. 1975). *See also* Mears v. Olin, No. 74–1565 (8th Cir., February 28, 1975); United States v. McMillan, 508 F.2d 101 (8th Cir. 1974). *See generally* McCormick, Evidence § 13 at 30 (Cleary ed. 1972). Moreover, the testimony of an expert witness is particularly appropriate where, as here, the trier of fact is presented with evidence of a highly technical nature. Holmgren v. Massey-Ferguson, Inc., 516 F.2d 856, 857–858, No. 74–1627 (8th Cir., May 15, 1975); Hoppe v. Midwest Conveyor Co., 485 F.2d 1196, 1202 (8th Cir. 1973); *see* Mears v. Olin, *supra.*

Dr. Kurt's testimony included a description of a test to which he had subjected the tire flap: In an effort to measure the tensile strength of the flap, he had placed it on a stretching device; he found that the flap broke when stretched approximately 340% beyond its "relaxed" state. Uniroyal contends that this testimony provided no basis for the jury's verdict since the plaintiff failed to prove that it is reasonably foreseeable that a tire flap would be stretched 340% in normal use. In other words, it is Uniroyal's position that the results of Dr. Kurt's test were irrelevant since he conceded that he had not calibrated the stretch to which a flap is placed in actual condition and that he knew of no

standard in the tire industry which a tire flap is supposed to meet.

Uniroyal points out other purported flaws in Dr. Kurt's testimony: his concession prior to trial that he was uncertain as to what extent the grainy structure contributed to the failure of the flap, his acknowledgment that he had not personally calibrated the testing devices and his admission that he had no prior experience with cracked flaps.

■ While Uniroyal's observations of the possible weaknesses in Dr. Kurt's testimony may be well taken, these are all points which go to the weight of the evidence or the credibility of the witness rather than to the admissibility of the testimony itself. As such, they are all points which were properly elicited from Kurt in the presence of the jury during vigorous voir dire and cross-examination by counsel for Uniroyal.[7] Moreover, once it became clear that Kurt could not meaningfully relate his 340% elongation of the flap to the stretch reasonably foreseeable in the actual use of the product, Judge Eisele sustained Uniroyal's objection to such testimony and restricted the questioning to Kurt's analysis of the physical or chemical composition of the flap.

■ With the strengths and weaknesses of Dr. Kurt's testimony fully before it, the jury was entitled to weigh the evidence and to consider it for what it was worth. Notwithstanding the evidence causally linking the accident to the improper installation of the tire components,[8] Dr. Kurt's testimony, if believed, provides a reasonable basis in fact for the jury's verdict. We are thus not prepared to say that there is no reasonable probability that the facts could be as

---

**7.** Significantly, most of the testimony relating to Kurt's test of the tensile strength of the tire flap was elicited not by plaintiff but rather by Uniroyal in voir dire questioning during plaintiff's direct examination of the witness.

**8.** We reject Uniroyal's contention that in order to recover from the manufacturer, plaintiff was required to rule out all other possible causes of the accident. Appellant's brief at 40. On the contrary, we believe that the law was

properly expressed in Judge Eisele's instruction to the jury that " \* \* \* if two or more causes work together to produce damage, then you may find that each of them was a proximate cause." *E. g.,* Cockerham v. Barnes, 230 Ark. 197, 321 S.W.2d 385 (1959); Willbanks v. Laster, 211 Ark. 88, 199 S.W.2d 602 (1947); Ward v. Walker, 206 Ark. 988, 178 S.W.2d 62 (1944). See 3B Ark.Stat.Ann. § 34–1002 (1962 Replacement).

related by this witness. *See* Independent Stave Co. v. Fulton, *supra.* As the jury's answers to the special interrogatories demonstrate, it synthesized all of the evidence, finding Uniroyal primarily liable for the accident but Quinn-Moore liable in part as well. Unable to reweigh the evidence or to substitute our judgment for that of the jury on disputed issues of fact, *see* Carter v. Aetna Casualty & Surety Co., 473 F.2d 1071 (8th Cir. 1973); Leathers v. United States, 471 F.2d 856 (8th Cir. 1972), cert. denied, 412 U.S. 932–33, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973); Armco Steel Corp. v. Realty Investment Co., 273 F.2d 483 (8th Cir. 1960); Chicago Great Western Railway Co. v. Casura, 234 F.2d 441 (8th Cir. 1956), we reject appellant's challenge to the sufficiency of the evidence.

## II. DUTY TO WARN

■ At the close of the trial, plaintiff was permitted to amend her complaint to include a theory of recovery based upon Uniroyal's failure to accompany its product with instructions for proper mounting.[9] The District Court instructed the jury as follows on this issue:

> If you find from the evidence that Uniroyal, as the manufacturer of the flap, knew that it was essential that certain procedures in the mounting of truck tires requiring the use of the flap be employed and that failure to use such procedures might cause failure of the flap, it was the duty of Uniroyal to issue adequate instructions as to the mounting procedure and adequate warning of the danger of not following such procedures.

Uniroyal contends that this instruction erroneously failed to inform the jury that a manufacturer only has a duty to warn of the existence of an unknown danger or one not reasonably discoverable, as set forth in Arkansas Model Jury Instruction 1003, approved by the Supreme Court of Arkansas.[10] It is Uniroyal's position that, because the improper mounting procedures employed by the Quinn-Moore attendants were fraught with dangers about which the attendants should have known, Uniroyal is not chargeable with negligence in failing to warn of such dangers. Uniroyal's objection on this ground to the wording of the instruction was overruled by the District Court. Upon examining the record, we find no prejudicial error in the instruction.

■ It is well settled that a court has no duty to instruct on matters about which no evidence has been presented. *See* Bern v. Evans, 349 F.2d 282, 290 (8th Cir. 1965). *See also* Smith v. Miller Creek Court, Inc., 457 F.2d 589 (10th Cir. 1972) (substantial evidence must be introduced to warrant the giving of an instruction). In Daleiden v. Carborundum Co., 438 F.2d 1017 (8th Cir. 1971), this court considered a question similar to that presented here. The plaintiff had been injured while operating a motor-driven cutting machine when a cutting wheel manufactured by the defendant shattered. He had never before had a blade explode while he was operating the cutting machine and he was not aware this could happen. The defendant had not warned users of the machine that its operation was dangerous without

---

9. As a result of the evidence indicating that the Quinn-Moore attendants had improperly mounted the tire assembly, Uniroyal's duty to warn of the proper mounting procedures developed as an issue during the course of the trial. Under Fed.R.Civ.P. 15(b), pleadings may be amended to conform to the evidence where the issues raised thereby "are tried by express or implied consent of the parties."

10. Arkansas Model Jury Instruction No. 1003 provides:

> A manufacturer of a _____ has a duty to give reasonable and adequate instructions with respect to the conditions and methods of its safe use when danger is reasonably foreseeable in its use, unless the danger is known to the user or is reasonably discoverable by him. A violation of this duty is negligence.

Ark.Model Jury Instructions 1003 (1974). *See also* Rhoads v. Service Machine Co., 329 F.Supp. 367 (E.D. Ark. 1971) (manufacturer not required to give warnings with respect to obvious danger or those that it is reasonably supposable that a user of the machine will discover for himself before coming to harm).

a protective guard. The case was submitted to the jury on theories of strict liability and negligence. On appeal from a general verdict for the plaintiff, the defendant asserted that the district court had erred in failing to instruct the jury that a manufacturer has no duty to warn a user of an obvious danger. This court affirmed, holding that such instruction was not required since the evidence "showed that the danger was not obvious to [plaintiff]. The defendant offered no evidence that the danger of the wheel's exploding was or should have been obvious." 438 F.2d at 1024.

The same standard may be applied when a manufacturer claims, as an exception to his duty to warn, the knowledge of the user. While there is no duty to warn a user who knows of the danger or by whom the danger is reasonably discoverable, the product's danger must, however, be shown to have been known or discoverable. *See* R. Hursh & H. Bailey, American Law of Products Liability 2d § 8:15 (1974); Ark. Model Jury Instructions 1003 (1974). This proof is not made by showing that another person unrelated to the plaintiff but in a similar occupation has somehow come upon knowledge of the danger. "Discoverable" clearly implies means by which the user can without danger to himself reasonably detect the hidden danger and guard against it. The record

is barren of such evidence. In this case the record conclusively establishes that Vineyard and Warner, who installed the tire, had no actual knowledge that the mounting procedure[11] they used could cause a tire to fail. There was evidence that the procedure they followed was normal.

A. C. Davis, president of a Little Rock, Arkansas, tire store, testified that he had known for approximately 35 years that one part of the procedure used by Warner and Vineyard was improper; he also said that his own employees did not always follow the proper procedure and that he had to instruct his employees on how to properly mount a tire. Nothing in his testimony tends to establish that Warner and Vineyard could reasonably have been expected to discover that the procedure they followed was dangerous.[12]

We therefore hold that there was no prejudicial error in the failure of the District Court to instruct the jury that no duty to warn arises when the danger of the product is known to the user or is reasonably discoverable by him, since there was no evidence in the record upon which to predicate such actual or discoverable knowledge.[13]

The judgment of the District Court is affirmed.

---

11. See note 4, *supra.*

12. Uniroyal admits that it packed mounting instructions along with its tubes, although it did not do so with its tire flaps. This is additional evidence that Uniroyal recognized that persons mounting tires would not be aware of the dangers inherent in an improper mounting procedure. In Griggs v. Firestone Tire & Rubber Co., 513 F.2d 851 (8th Cir. 1975), this court said:

Defendant, by its very warning literature, implicitly acknowledges that its product is "dangerous for the use for which it is supplied" and that those "for whose use the chattel is supplied" would not realize that dangerous condition.

13. We find no merit in Uniroyal's contention that it should be allowed to rely upon the manufacturers of the other tire assembly components to provide an adequate warning.