**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0461n.06
Case No. 19-3907

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 04, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| THOMAS SMITH, as Power of Attorney for Menno Schwartz, Jr., | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
|     Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| WOOLACE ELECTRIC CORPORATION; STEVEN GARZA, as both an individual and as an employee of Woolace Electric Corporation, | ) ) ) ) ) | **OPINION** |
|     Defendants-Appellees. | ) ) | |

BEFORE: SILER, MOORE, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Accidents invite rescue. And when Menno Schwartz, Jr. and the men with whom he was travelling saw an overturned van, they stopped to help. But what started as a good Samaritan act ended in Schwartz, Jr. getting hit by another car.

At a jury trial to recover for negligence against Steven Garza (the driver of the overturned van) and his employer, the district court judge (1) granted the Defendants' motion for judgment as a matter of law on Ohio's rescue doctrine, (2) excluded evidence that Garza received a traffic citation, and (3) excluded testimony about the relationship between the first accident and the second accident that injured Schwartz, Jr. The jury found Garza not liable for negligence. Smith's representative contests all those decisions. Because we find any error harmless for some of those decisions and no error for others, we **AFFIRM**.

I.

While driving a van for his employer, Woolace Electric Corporation, Steven Garza lost control on U.S. 30 in Allen County, Ohio. The van ultimately came to rest on its side. Garza and his passenger, Randy Clemens, left the van and moved to the guardrail. The parties agree that Garza "was acting within the scope of his employment when he lost control of the van." (R. 95, PID 1359.)

Another van carrying several men, including Michael Whitacre and Menno Schwartz, Jr., stopped at the scene. There is some dispute about exactly what the occupants of the second van did after they stopped, but there is no dispute that a third vehicle, driven by Corey McManues, came along sometime after and hit Menno Schwartz, Jr. The impact sent Schwartz, Jr. over the highway's guardrail into a ditch below. Schwartz, Jr. allowed Reverend Thomas Smith, Schwartz's power of attorney, to sue several parties involved, including Garza and Woolace Electric. Smith sued to "separate [Schwartz, Jr.] from the lawsuit" because Schwartz, Jr.'s religious beliefs did not allow for that conflict in the legal system. (R. 96, PID 1579, 1590–92.)

The parties dispute exactly what Schwartz, Jr. was doing when McManues's car hit him. This matters, because if Schwartz, Jr. was acting as a rescuer when McManues hit him, then Garza may have been liable to him under Ohio's rescue doctrine. Adding to the dispute, Schwartz, Jr. lost all recollection of the events. So other witnesses had to explain Schwartz's actions. Whitacre testified that he and Schwartz went to the overturned van, which protruded slightly into the roadway, to see if anyone was in it. They spent a couple of minutes looking for people in the van and then looked around it. Whitacre explained:

2

> [A]fter that, I mean, time lapsed, I mean, I don't – I can't remember. All I remember is him not being there anymore. I mean, it could be less than ten minutes, you know, it could be, I don't know. My average guess is maybe ten minutes on the scene before the accident happened.

(*Id.* at 1455.) Whitacre did not remember doing anything to warn McManues's vehicle barreling toward them. Whitacre just remembered turning and saying they needed to get out of there. He did not see the vehicle hit Schwartz, Jr., and he was not sure what exactly Schwartz, Jr. was doing when McManues's car hit him.

Giving a different account, Schwartz, Sr., who also rode with Whitacre that day, assumed his son spoke with Garza and Clemens before McManues's car hit him. Schwartz, Sr. walked toward Garza and Clemens after getting out of the car. He spoke with them and thought his son was with him, but then said that he was not sure about that.

What's more, Garza agreed that he told a trooper that some men who stopped to help him were waving off oncoming traffic with lights. And at least one trooper's report conveyed that someone (presumably Garza) stated just that. So Smith argues that Schwartz, Jr. was acting as a rescuer by waving off traffic when McManues's car hit him.

Along with these facts, witnesses disputed whether one or both vans had flashers on. Smith argues that if the Whitacre van had flashers on, then Schwartz, Jr. acted as a rescuer by being in the car that stopped and flashed its hazards. Smith's logic is that those hazard lights were warning oncoming cars of the dangerous scene and protecting Garza and Clemens from getting hit while on the side of the road. But if only the overturned van had flashers on, then Schwartz, Jr. could not have been helping with flashers.

Witnesses also disagreed over what parts of the road had ice on it. Some witnesses thought only the bridge where Garza lost control had ice on it. At least one other witness said the road was icy before the bridge too.

3

Both troopers who responded to the scene testified at trial. On cross examination, defense counsel asked Trooper Robert Gatchel about why he filled out two accident reports. Gatchel at first agreed with counsel that "there were two separate and distinct accidents that morning" but then stated that he would have submitted two accident reports, even if the accidents were related. (*Id.* at 1517–18.) He explained that "the only time [they] do two vehicles and one crash [report] is when it was a bam, bam incident." (*Id.* at 1518.) On redirect, counsel asked a clarifying question about whether the two accidents (the overturned van and then McManues's crash) were related. Trooper Gatchel responded: "The second one would not have occurred if the first one wasn't in the roadway." (*Id.* at 1521.) Defense counsel did not object.

Then Trooper Matthew Murphy testified. Smith's counsel also asked Murphy about the relationship between the two accidents: "[W]hat is your understanding for the relationship between Mr. McManues'[s] accident and the initial accident of Mr. Garza's van?" (*Id.* at 1551.) Defense counsel objected without stating grounds, and the judge sustained the objection. Later, Smith's counsel asked about the risk of later accidents after an accident like the one that led to the overturned van. Trooper Murphy agreed there was "a propensity" for more collisions in that scenario: "That's why you have secondary collisions . . . ." (*Id.* at 1559.) Counsel then again asked if the two collisions were related. Defense counsel again objected, and the judge sustained.

After Smith rested his case, the defense moved for a directed verdict. The judge entered a judgment as a matter of law, finding that the rescue doctrine did not apply, but denied the motion for negligence, instead allowing the jury to resolve that issue. Toward the end of trial, the judge permitted the jury to submit written questions. At least one juror asked whether an officer issued a citation to any drivers. The judge explained to the jury that "[w]hether one or more driver was cited as a result of these accidents is not relevant for your purposes, and you should not speculate

about that." (R. 97, PID 1656.) In fact, before voir dire, the judge decided to exclude from evidence Garza's traffic citation issued after the accidents.

The judge gave the jury a series of questions to answer to aid them in their verdict. In the end, the jury needed to answer only the first question because it found that Garza was not negligent. That obviated the need for the jury to answer further questions regarding causation, comparative negligence, damages, etc.

Smith moved for a new trial on four grounds: (1) that the district judge improperly granted the Defendants' motion for judgment as a matter of law on the rescue doctrine, (2) that the district court should have admitted the citation into evidence, (3) that the district court should have allowed testimony from Trooper Murphy about the relatedness between the two accidents, and (4) that the verdict went against the weight of the evidence. The district court denied the motion, and this appeal from the denied motion for a new trial "and the decisions described therein" followed. (R. 103, PID 1778.)

## II.

Under Rule 59 of the Federal Rules of Civil Procedure, a district court may grant a motion for a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). Some examples include when the verdict is against the weight of the evidence, damages are excessive, or the trial court acted unfairly, perhaps after "being influenced by prejudice or bias." *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 835 (6th Cir. 2013) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1046 (6th Cir. 1996)). In diversity cases, "[w]e review a denial of a motion for a new trial for abuse of discretion, applying the federal standard rather than Ohio law." *Clay v. Ford Motor Co.*, 215 F.3d 663, 672 (6th Cir. 2000). Abuse of discretion means that the district court "relie[d] on clearly

erroneous findings of fact, use[d] an erroneous legal standard, or improperly applie[d] the law."

*Norfolk S. Ry. Co. v. Allied Erecting & Dismantling Co.*, 775 F. App'x 178, 186 (6th Cir. 2019)

(quoting *United States v. Arny*, 831 F.3d 725, 730 (6th Cir. 2016)).

But Smith also independently challenges the rulings mentioned within the motion for a

new trial too. To the extent that the standard of review changes when analyzing those decisions,

we cite the appropriate standard below. We first examine the judgment as a matter of law on the

rescue doctrine, then the exclusion of the citation, then the relatedness issue, and finally whether

sufficient evidence supported the jury's conclusion.

A.

We review a district court's grant or denial of a motion for judgment as a matter of law de

novo. *See Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006). Under federal law:

> If a party has been fully heard on an issue during a jury trial and the court finds that
> a reasonable jury would not have a legally sufficient evidentiary basis to find for
> the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or
> defense that, under the controlling law, can be maintained or defeated only with
> a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1)(A)–(B). For diversity cases like this, when we review Rule 50(a) motions,

we apply the state-law standard.[1] *Mannix v. County of Monroe*, 348 F.3d 526, 531–32 (6th Cir.

2003). In Ohio, "[t]he test for granting a directed verdict or a judgment n.o.v. is whether the

movant is entitled to judgment as a matter of law when the evidence is construed most strongly in

favor of the nonmovant." *Kusens*, 448 F.3d at 360 (alteration in original) (quoting *Sanek v.*

---

[1] Applying this "so-called 'state law standard' for judgment as a matter of law under Rule 50" appears to be the minority view of the federal circuit courts. *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 313 n.11 (6th Cir. 2011); *Mannix v. County of Monroe*, 348 F.3d 526, 531–32 (6th Cir. 2003). We have continued to adhere to this application despite it being the minority rule and despite *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). *See Ventas, Inc.*, 647 F.3d at 313 n.11.

*Duracote Corp.*, 539 N.E.2d 1114, 1117 (Ohio 1989)). A court should grant such a motion "only if, after considering the evidence in this light, there can be but one reasonable conclusion as to the proper verdict." *Id.* (citing *Construction Interior Sys., Inc. v. Marriott Fam. Rests., Inc.*, 984 F.2d 749, 753 (6th Cir. 1993) (stating the Ohio standard)); *see also Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 839–40 (Ohio 2002).

Of course, we apply state substantive law when analyzing state-law claims. *Brocklehurst v. PPG Indus.*, 123 F.3d 890, 894 (6th Cir. 1997). And we give our best prediction of how the state's supreme court would answer a question, if it has not directly answered it before. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004). State appellate courts provide guidance unless "'persuasive data' convinces us that the highest state court 'would decide otherwise.'" *Faber v. Ciox Health, LLC*, 944 F.3d 593, 601 (6th Cir. 2019) (quoting *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989)).

Ohio has long recognized the common law rescue doctrine: "[I]f [a] rescuer does not rashly and unnecessarily expose himself to danger, and is injured, the injury should be attributed to the party that negligently, or wrongfully, exposed to the danger, the person who required assistance." *Bennett v. Stanley*, 748 N.E.2d 41, 48 (Ohio 2001) (quoting *Pennsylvania Co. v. Langendorf*, 28 N.E. 172 (Ohio 1891), paragraph three of the syllabus); *see also Pittsburg[h], Cincinnati, Chicago & St. Louis Ry. Co. v. Lynch*, 68 N.E. 703 (Ohio 1903). As the Ohio Supreme Court said in 1891:

> [W]here another is in great and imminent danger, one who attempts a rescue may be warranted by surrounding circumstances in exposing his limbs or life to a very high degree of danger; and in such cases he should not be charged with the consequences of errors of judgment resulting from the excitement and confusion of the moment.

*Langendorf* at paragraph two of the syllabus. And a few years later, the court declared: "[T]he person whose rescue is attempted must be in a position of peril from the negligence of the defendant, and the rescue must not be attempted under such circumstances or in such a manner as to constitute recklessness." *Lynch* at syllabus. When one negligently places himself or others in danger, someone foreseeably may try to rescue, so the negligent individual owes a duty to the rescuer and can be liable for the rescuer's harm. *Estate of Minser v. Poinsatte*, 717 N.E.2d 1145, 1148 (Ohio Ct. App. 1998).

But a rescuer can "only recover against one found negligent." *Reese v. Minor*, 442 N.E.2d 782, 783 (Ohio Ct. App. 1981). "A finding that the defendant did not act negligently renders errors with respect to jury instructions that depend on a finding of negligence harmless." *Nails v. Asphalt*, No. 07CA0010-M, 2007 WL 4081865, at *4 (Ohio Ct. App. Nov. 19, 2007). For example, in *Nails*, a woman stopped at the scene of an accident near the worksite of the defendant company to offer help. *Id.* at *1. As another vehicle approached, she sensed another accident coming, so she started to walk away and fell in a ditch. *Id.* She sued the defendant company alleging that it "negligently failed to warn drivers that its work was blocking a portion of the roadway, causing 'a multiple car chain reaction accident' that ultimately resulted in her injuries." *Id.* And she sued the driver of the oncoming car for negligent operation of a motor vehicle. *Id.* The jury decided the defendant company was not negligent over the plaintiff's injury, and the other driver's negligence (which the parties stipulated) did not proximately cause the plaintiff's injuries. *Id.* Because the jury found "that the accident could not be attributed to the negligence of either defendant," the court found that any failure to instruct the jury on the rescue doctrine was harmless. *Id.* at *4. So neither defendant could be liable under the rescue doctrine. *Id.*

Similarly, in *McDougall v. Smith*, the court found a rescue doctrine issue moot because the trial court correctly determined that the first driver's actions in causing the first accident did not proximately cause the second accident. 944 N.E.2d 1218, 1220 (Ohio Ct. App. 2010). In that case, a driver caused a car accident, and an ambulance came to assist some of the injured parties. *Id.* at 1219. Then when the ambulance drove to the hospital, it got into an accident. *Id.* The court found that the second accident was not a foreseeable consequence of the first, so the causal chain broke, and the original driver who crashed was not liable to those hurt in the second crash. *Id.* at 1220 ("One is permitted to assume that others will follow the law and exercise ordinary care."). This meant the rescue doctrine issue was moot. *Id.*; *see also Wilson v. K-Mart Corp.*, No. 5628, 1981 WL 6474, at *1 (Ohio Ct. App. Nov. 4, 1981) (declining to reach the question of the rescue doctrine's applicability when the defendant did not breach its duty).

Here, the first question on the seven-page verdict form was whether Garza was negligent. The jury circled "no," and the verdict form told them to not proceed with any further questions. So before even reaching the question of whether Garza had caused Schwartz, Jr.'s injury, the jury determined that Garza was not negligent in operating his vehicle. Therefore, Schwartz, Jr. could not have been rescuing the "victim" of a tortfeasor's act (here Garza himself and his passenger would have been the victims of Garza's alleged negligence that needed rescuing). As a result, any error by the district court in granting the motion for judgment as a matter of law (or denying the motion for a new trial on these grounds) was harmless under the principles in *Nails*, *McDougall*, and *Wilson*.

B.

Next is whether the district court properly disallowed evidence that a trooper cited Garza for failing to maintain control of his vehicle under Ohio Revised Code § 4511.202. "We review a district court's admission or exclusion of evidence for abuse of discretion." *United States v. Collins*, 799 F.3d 554, 572 (6th Cir. 2015). But we review de novo the "determination and interpretation of Ohio's substantive law." *Jim White Agency Co. v. Nissan Motor Corp. in U.S.A.*, 126 F.3d 832, 835 (6th Cir. 1997).

The parties both argue that Ohio law applies to the admissibility of the citation, but we are not convinced. And the trial court here at least partly analyzed the issue under the Federal Rules of Evidence (as it probably should have). *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019). But regardless of whether we apply federal rules or state rules, the district court properly excluded the citation evidence. So we need not decide whether federal or state law applies, instead analyzing the admissibility under both.

Federal Rule of Evidence 403 bars the admission of the citation. It states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Including evidence of a traffic citation in a negligence action is substantially more unfairly prejudicial than probative if the cited individual has not pleaded guilty to the citation. This is because the alleged offender has neither admitted fault nor defended the citation action in quite the way he would defend a negligence tort action. *See Hill v. Rolleri*, 615 F.2d 886, 890 (9th Cir. 1980) (finding no abuse of discretion in excluding evidence of a citation under Rule 403 because

10

the unfair prejudice "from a nonjudicial determination of improper driving outweighs the probative value of the citation on the issue of negligence"); *see also Iglinsky v. Player*, No. 08-650-BAJ-CN, 2010 WL 4925000, at *6 n.14 (M.D. La. July 16, 2010) (finding the citation evidence inadmissible under state law and Rule 403 of the Federal Rules of Evidence, in part because defending the citation differs from defending the action at issue). And Smith has not contested the claim that Garza did not plead guilty to the citation. So the district court properly excluded the citation evidence because it was substantially more unfairly prejudicial than probative.

With regard to whether the citation would be admissible under Ohio law, the parties point to a number of Ohio statutes. For example, the Defendants point to Ohio Revised Code § 2307.60(A)(2), which states that:

> A final judgment of a trial court that has not been reversed on appeal or otherwise set aside, nullified, or vacated, entered after a trial or upon a plea of guilty, but not upon a plea of no contest or the equivalent plea from another jurisdiction, that adjudges an offender guilty of an offense of violence punishable by death or imprisonment in excess of one year, when entered as evidence in any subsequent civil proceeding based on the criminal act, shall preclude the offender from denying in the subsequent civil proceeding any fact essential to sustaining that judgment, unless the offender can demonstrate that extraordinary circumstances prevented the offender from having a full and fair opportunity to litigate the issue in the criminal proceeding or other extraordinary circumstances justify affording the offender an opportunity to relitigate the issue.

Ohio Rev. Code Ann. § 2307.60(A)(2). Thus, absent extraordinary circumstances, a person who is, essentially, convicted of a felony in Ohio cannot deny in a later civil proceeding the facts that were needed for that conviction, if the conviction has been entered as evidence.

The Defendants say that this statute necessarily allows a party to introduce a criminal conviction into evidence only when the punishment for the offense exceeds one year. And they cite an Ohio case in support of this argument that § 2307.60(A)(2) bars admission of traffic citation evidence. *See Brunner v. RJ Lipps, Inc.*, No. C-150601, 2016 WL 3090787, at *3 (Ohio Ct. App.

June 1, 2016). But Smith says this statute is inapplicable here in part because the statute only addresses "violent offenders" and not those "guilty of a traffic citation." (Appellant's Br. at 29–30.) And the statute does not explicitly bar the introduction of non-felony convictions into evidence.

Regardless, at the very least the statute did not *require* the citation's *admission* in this case. Smith does not contest that Garza did not plead guilty to the citation, and Garza's alleged violation presumably would have imposed less than a year of imprisonment (as a minor misdemeanor). So the statute would not require the citation's admission.

Smith also discusses the alleged implication that Ohio's statute that penalizes the failure to wear seatbelts, Ohio Revised Code § 4513.263(F)(1), has on the statute for failure to operate a vehicle with reasonable control, Ohio Revised Code § 4511.202. Although car drivers and passengers must wear seatbelts, § 4513.263(F)(1) provides that a trier of fact cannot use failure to wear a seatbelt or to properly restrain a minor to show negligence. On the other hand, § 4511.202, which is the provision that Garza was cited for violating, is silent about whether a trier of fact can use a violation of that section as evidence in a negligence action. Thus, Smith argues that the citation should have been admitted by negative implication. But the fact that § 4511.202 fails to include a restriction of use during negligence actions does not mandate the citation's admittance, even though § 4513.263(F)(1) does contain such a restriction.

And perhaps most importantly, Ohio's courts have uniformly found that traffic citations are inadmissible in negligence actions. *See Hickory Grove Inv'rs, Ltd. v. Jackson*, 904 N.E.2d 546, 550–51 (Ohio Ct. App. 2008); *O'Toole v. Lemmerman*, No. 80730, 2002 WL 31261005, at *3 (Ohio Ct. App. Oct. 10, 2002); *Bishop v. Munson Transp., Inc.*, No. 97 BA 62, 2000 WL 309398, at *2, *5 (Ohio Ct. App. Mar. 27, 2000) (noting that a party conceded that not redacting

information about the traffic citation in an exhibit constituted error); *Waller v. Phipps*, No. C-000758, 2001 WL 1077942, at *1–2 (Ohio Ct. App. Sept. 14, 2001) ("Evidence of whether a party was cited for the underlying traffic accident is not admissible in a negligence action—period."). So even if we believed that Ohio law governed the admissibility of the citation here, the district court still properly excluded the evidence.

For these reasons, we find no abuse of discretion in barring the citation evidence or denying the motion for a new trial on that point.

## C.

Next comes the testimony from the troopers about the relationship between the accidents. As mentioned, "[w]e review a district court's admission or exclusion of evidence for abuse of discretion." *Collins*, 799 F.3d at 572. We reverse evidentiary errors "only when we find that such abuse of discretion has caused more than harmless error." *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994); *see also* Fed. R. Civ. P. 61. "There is no prejudice," or in other words, exclusion is harmless, "if other substantially equivalent evidence of the same facts [was] admitted into evidence." *In re Air Crash Disaster*, 86 F.3d 498, 526 (6th Cir. 1996) (alteration in original) (quoting *Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 567 (6th Cir. 1985)). And there is no "prejudice if the absence of the evidence had no effect on the final result of the trial." *Id.*

Here, any error over excluding Trooper Murphy's testimony was harmless. The plaintiff introduced substantially equivalent evidence through Trooper Gatchel's testimony. Trooper Gatchel stated that the two accidents were related when Smith's counsel re-directed him. Plus, Trooper Murphy testified about a propensity for other accidents when an overturned vehicle rests on the side of the road. This also suggests that the accidents were related.

What's more, it is apparent that substantially equivalent evidence came in during trial because Smith's counsel even reminded the jury of Trooper Gatchel's "relatedness" testimony during closing. So we find that any alleged error was harmless.

D.

Finally, we address the weight of the evidence. As mentioned earlier, we review a denied motion for a new trial for abuse of discretion. One reason to grant a new trial under Rule 59 would be if the verdict is "against the clear weight of the evidence." *Clay*, 215 F.3d at 672 (citing *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991)).

The jury instructions in this case asked the jury to answer whether Garza, during "the scope of his employment with Woolace Electric, was negligent by operating a vehicle without reasonable control, thereby creating a public hazard, and by not responding properly to the hazard he created." (R. 87-1, PID 1227.)

Given this instruction, there was sufficient evidence supporting the jury's verdict. Trooper Murphy testified that Garza communicated to him that he had been driving at sixty-five miles per hour. And the speed limit in that area was seventy miles per hour. McManues and Schwartz, Sr. both thought that the road before the bridge was not icy (though Whitacre said it was). Plus the way Smith's counsel questioned Garza implies that Garza only thought the bridge had ice on it, not the preceding roadway, and counsel seemed to know that Garza thought this. So based on three people implying that no ice was on the road until the bridge, a reasonable jury could find that Garza exercised reasonable control over his vehicle and that the ice on the bridge was a circumstance out of his hands. In other words, a reasonable jury could find that Garza did not breach his duty because he exercised reasonable control over his vehicle just before hitting the ice on the bridge—a circumstance beyond his influence.

14

Now, this being said, Smith also seems to suggest that because Garza admits that he lost control of his vehicle, he violated Ohio Revised Code § 4511.202, and therefore he was negligent per se under Ohio law. That section says that a person "shall [not] operate a motor vehicle . . . without being in reasonable control of the vehicle[.]" Ohio Rev. Code Ann. § 4511.202(A). If a person fails to so control his vehicle, he "is guilty of . . . a minor misdemeanor." *Id.* § 4511.202(B). So one might read this statute as imposing something approaching strict liability.

The problem for Smith here is that he explicitly disclaimed making a negligence per se argument below and only asked for a negligence per se instruction if Defendants received a Sudden Emergency instruction. (R. 71, PID 762 (mentioning in the joint proposed jury instructions: "Plaintiff[] would note that [he] do[es] not make claims for negligence per se").) And Smith fails to mention "negligence per se" in his briefing to this court. Regardless, this argument would not entitle Smith to a new trial.

Some Ohio courts refuse to recognize the violation of § 4511.202 as establishing negligence per se. *See Campbell v. Hall*, No. S-88-1, 1989 WL 29856, at *2 (Ohio Ct. App. Mar. 31, 1989); *Masterson v. Kerzan*, No. WD-94-066, 1995 WL 136449, at *3 (Ohio Ct. App. Mar. 31, 1995); *see also Morris v. Gavan*, No. 1:08-cv-01436, 2009 WL 1921116, at *3 (N.D. Ohio July 1, 2009). So under those cases, we would decline to find that the verdict was against the clear weight of the evidence based on Garza's alleged violation of this Ohio statute.

But other Ohio cases suggest that icy roads may not be an excuse for violating § 4511.202, so losing control of one's vehicle because of ice in violation of § 4511.202 could constitute negligence per se. *See Corfee v. Swarthout*, No. 99 CO 55, 2001 WL 1199058, at *4 (Ohio Ct. App. Sept. 25, 2001); *see also Bush v. Harvey Transfer Co.*, 67 N.E.2d 851, 855 (Ohio 1946) (noting that "[s]ince the failure to comply with the provisions of a safety statute constitutes

negligence per se, a party guilty of the violation of such statute cannot excuse himself from compliance by showing that '*he did or attempted to do what any reasonably prudent person would have done under the same or similar circumstances*'"); *State v. Houston*, 114 N.E.3d 1236, 1245–46 (Ohio Ct. App. 2018) (in the context of a criminal appeal from a § 4511.202 conviction, noting that ice constituted a circumstance within a driver's control); *cf. Oechsle v. Hart*, 231 N.E.2d 306, 309–10 (Ohio 1967) (finding that ice constituted a circumstance within the driver's control, so the violation of two other safety statutes because of ice constituted negligence per se); *State v. Wieckowski*, No. 2010-CA-111, 2011 WL 5143183, at \*3 (Ohio Ct. App. Oct. 28, 2011) (discussing *Oechsle*'s conclusion about ice in the context of a different criminal appeal). These cases suggest that, regardless of the circumstances (icy roads), Garza would have been liable and negligent per se.

The problem is that the jury instructions explained that "[o]rdinary care is the care that a reasonably careful person would use under the same or similar circumstances" when explaining negligence. That explanation of the law tracks what the Ohio pattern jury instructions read regarding loss of reasonable control of a vehicle based on § 4511.202. *See* 1 OJI-CV 411.15 ("'Reasonable control' means the control or care that a (cautious) (careful) person would use under the same or similar circumstances.").

If Smith had asked for an instruction saying that ice does not excuse losing control of one's vehicle under § 4511.202, this may be a different case.[2] *See Falgner v. Sucher*, Nos. C-990566, A-9706477, 2000 WL 1268803, at \*2 (Ohio Ct. App. Sept. 8, 2000) (finding error over a negligence per se issue for not instructing the jury "that the presence of ice on the roadway [does not] excuse[] an alleged violation" of § 4511.202 by the defendant). But he did not. And again,

---

[2] He objected to instructions about sudden emergencies and acts of God though.

16

in the joint proposed jury instructions, Smith specifically said he "do[es] not make claims for negligence per se." (R. 71, PID 762.) Smith also agreed to a reasonableness element in the proposed jury instructions, which said that "whether Garza's operation and control of his vehicle was reasonable is for the jury to decide." (*Id.* at 771.) Third, Smith never objected to the jury instructions that put "the same or similar circumstances" at issue. And fourth, Smith does not point to these Ohio cases or argue these nuanced points about slipping on ice being "a circumstance within the power of motorists to prevent." *Falgner*, 2000 WL 1268803, at \*2 (quoting *Oechsle*, 231 N.E.2d at 310).

The bottom line is that the parties and the district judge told the jury to answer whether Garza exercised ordinary care "that a reasonably careful person would use under the same or similar circumstances." (R. 87-1, PID 1227.) And the jurors were not instructed about any explicit limitations on those circumstances based on any Ohio caselaw regarding icy conditions in particular. On this record, we cannot find that the verdict is against the clear weight of the evidence.

III.

For these reasons, we **AFFIRM** the district court's denial of Smith's motion for a new trial and all the decisions referenced within.